CRAIN, Judge
This is an appeal from a judgment of the trial court which sustained the defendant-mother’s exceptions of lack of jurisdiction over subject matter and improper venue to the plaintiff-father’s rule for custody of their two children.
In 1971 Gerald and Kathryn Edwards were married in Georgia. Shortly thereafter they moved to Arkansas, then to Louisiana in 1974, eventually settling in Livingston Parish in December of 1977. They had two children, Jamison, born in 1973 and Wayne, born in 1975.
On August 21, 1980, Kathryn Edwards (Kathryn) moved with the children to Houston County, Georgia, leaving her husband. He remained in Livingston Parish. In September of that year, Gerald Edwards (Gerald) filed a suit for a separation on the grounds of abandonment and for custody of the minor children. A judgment was entered in November 1980, in the 21st judicial district granting Gerald the separation, but awarding custody of the minors to Kathryn.
On May 6, 1981, Kathryn obtained a final divorce decree in Georgia superior court which also awarded her permanent custody of the children. In June of 1983, after having lived in Georgia for three years, the boys came to Louisiana to spend the summer vacation with their father. They originally planned to return to Georgia in time for the 1983-84 school term. However, the boys later told their mother that they would like to remain in Louisiana and attend the 1983-84 school term in Livingston Parish. The parents conferred, and Kathryn agreed to let the boys stay for the year in order that they might “get to know” their father. With the exception of a brief Christmas visit to their mother, the boys remained in Louisiana.
On April 10, 1984, Gerald Edwards filed this rule for custody of the children. Kathryn filed the present exceptions to his rule, which the trial court sustained.
Gerald Edwards alleges four assignments of error by the trial court. He alleges the trial court erred in finding it had no jurisdiction over the child custody matter. He claims Louisiana has jurisdiction because: 1) It was the “home state” of the children at the commencement of the proceeding under La.R.S. 13:1702(A)(1) or 2) It is to the “best interest of the child” for Louisiana to assert jurisdiction under the standards of La.R.S. 13:1702(A)(2). Two additional assignments of error are argued but because we feel this dispute is resolved by a determination of the first two assignments, we pretermit a discussion of the others.
HOME STATE JURISDICTION
Jurisdiction over status to make an initial child custody determination or to modify an existing decree is provided for in La.R.S. 13:1702. One method of the Louisiana Court acquiring jurisdiction is for Louisiana to be the “home state” of the child at the commencement of the proceeding. La. R.S. 13:1702(A)(1). The definition of a “home state” is found in La.R.S. 13:1701(5), which provides as follows:
(5) ‘Home State’ means the state in which the child immediately preceding the time involved lived with his parents, [or] a parent ... for at least six consecutive months ... Periods of temporary absence of any of the named persons are counted as part of the six-month or other period, (emphasis added)
Appellant argues that Louisiana automatically became the home state upon the children’s having lived in Louisiana with a parent for at least six months. Appellee argues that since the children were only in Louisiana temporarily, Georgia remains the home state, and Louisiana never attained home state status. This argument is based on a construction of the “temporary absence” portion of 13:1701(5) as an exception to automatic vesting of jurisdiction upon meeting the requirements of having lived in this state for six consecutiva months with a parent. Therefore, she argues that *499 Georgia having validly been the home state preceding the visit to Louisiana, the chil-drens’ temporary absence from Georgia, while in Louisiana, never interrupted the Georgia home state status, and is to be counted as part of the six month or other period per 13:1701(5).
We disagree. Home state status is automatic upon a child’s having lived with a parent in the state where the child is located at the commencement of the proceeding for six consecutive months, regardless of the reason the child is living there. The statute provides for a determination based upon the physical presence of the child when the proceeding is commenced. Intent is not pertinent to the inquiry. Temporary absence is not meant to be an exception to this rule. To the contrary, temporary absence is only to be considered in reference to the state where the child has lived for six consecutive months at the time of the commencement of the proceedings. It is then an inclusion into the six month period rather than an exclusion from that period. The action was commenced in Louisiana where the children were located. The only question is whether they had been here for six months. A temporary absence from this state, such as the short Christmas visit the children made to Georgia, is to be counted as part of the six-month period allowing Louisiana to assert home state jurisdiction. We find the trial court erred in applying the six months test to Georgia, where the children were not located when the action was commenced, rather than to Louisiana where the children were located. Louisiana has jurisdiction as the “home state”.
Appellee contends that to allow Louisiana to assert jurisdiction over the children would be to discourage custodial parents from allowing visitation and other amicable relations between noncustodial parents and children. The UCCJA has provisions to address precisely these concerns. It mandates that a state decline to exercise its jurisdiction when a noncustodial parent attempts to take advantage of visitation rights and keep the children, seeking a change in custody. This is the so called “Clean Hands” limitation on jurisdiction contained in La.R.S. 13:1707. Though neither party has directly addressed the issue we find 13:1707 to be dispositive of this matter and notice it sua sponte. La.R.S. 13:1707 B provides in pertinent part as follows:
Unless required in the interest of the child, the court shall not exercise its jurisdiction to modify a custody decree of another state if the petitioner, without consent of the person entitled to' custody, ... has improperly retained the child after a visit or other temporary relinquishment of physical custody, (emphasis added)
The trial court found that the visit was temporary, and the mother never intended to relinquish custody. Her testimony additionally indicated she tried to get her children back but was unsuccessful. Mr. Edwards has improperly retained his children. Under these circumstances R.S. 13:1707 mandates the Louisiana court decline jurisdiction to modify the existing Georgia decree.[1]
This mandatory decimation of jurisdiction is subject to the exception that jurisdiction is to be assumed if “required in the interest of the child.” The trial court did not directly address this issue, but we note that a liberal interpretation of this “interest of the child” test would be contrary to the stated purposes of La.R.S. 13:1700[2] *500 particularly section A(5), to “Deter abductions and other unilateral removals of children undertaken to obtain custody awards.” See, McGough and Hughes Chartered Territory: The Louisiana Experience With the Uniform Child Custody Jurisdiction Act, 44 La.L.Rev. 19 at 57 (1983).
Our independent review of the record reveals no facts which would require this court to exercise jurisdiction in the interest of the children. We further have no indication that the Georgia courts will not give a proper hearing in regards to the relative merits of Mr. Edwards’ petition for custody of his children.
Accordingly, for the above and foregoing reasons the judgment of the trial court is affirmed, appellant to bear costs.
AFFIRMED.

. We need not therefore, address whether this court has the power to modify the Georgia custody decree under La.R.S. 13:1713.

. CHILD CUSTODY JURISDICTION R.S. 13:1700
§ 1700. Purposes of Part; construction of provisions
A. The general purposes of this Part are to:
(1) Avoid jurisdictional competition and conflict with courts of other states in matters of child custody which have in the past resulted in the shifting of children from state to state with harmful effects on their well-being.
(2) Promote cooperation with the courts of other states to the end that a custody decree is rendered in that state which can best decide the case in the interest of the child.
*500 (3) Assure that litigation concerning the custody of a child takes place ordinarily in the state with which the child and his family have the closest connection and where significant evidence concerning his care, protection, training, and personal relationships is most readily available, and to assure that the courts of this state decline the exercise of jurisdiction when the child and his family have a closer connection with another state.
(4) Discourage continuing controversies over child custody in the interest of greater stability of home environment and of secure family relationships for the child.
(5) Deter abductions and other unilateral removals of children undertaken to obtain custody awards.
(6) Avoid relitigation of custody decisions of other states in this state insofar as feasible.
(7) Facilitate the enforcement of custody decrees of other states.
(8) Promote and expand the exhange of information and other forms of mutual assistance between the courts of this state and those of other states concerned with the same child, and
(9) Make uniform the law of those states which enact it.
B. This Part shall be construed to promote the general purposes stated in this Section.